PRESIDENT, DIRECTORS, &C. OF THE BOSTON BANK *vs.*
WILLIAM MINOT, Administrator.

The trustee process, served on an administrator, at the suit of a creditor of one whom
the intestate owed, attaches the whole amount which the intestate's creditor will
eventually be entitled to receive of the administrator. Hence, where an administra-
tor of an insolvent estate, after the service of such process upon him, sells the intes-
tate's real estate for payment of his debts, under a license granted for that purpose,
and receives the proceeds of the sale, and also collects debts due to the intestate, and
a distribution among the intestate's creditors is then ordered by the probate court ;
the administrator is held as trustee of the attaching creditor, to the full amount of
the dividend decreed to such creditor.

SCIRE FACIAS on a judgment recovered against the defend-
ant, in a suit in which he was summoned as trustee of the
Commonwealth Bank.

The following facts were set forth in the answer filed by the
defendant :   The defendant was administrator of the estate of
John K. Simpson, which was insolvent :   The commissioners,
appointed to examine and allow the claims of the creditors of
said Simpson, allowed a very large claim of the Commonwealth
Bank, on which the dividend, upon a decree of distribution,
made on the 14th of December 1840, was $ 11,365·30.

On the 23d of November 1839, Emery Johnson commenced
a suit against said bank, and attached its effects in the hands of
the defendant.   At that time, the defendant had in his hands
about $ 1235, being wholly the proceeds of the personal prop-
erty of said Simpson ; and he afterwards received various sums
of money for debts due to said Simpson, and further proceeds
of his personal property, amounting to $700 or more.

On the 22d of September 1840, the plaintiffs commenced a
suit against said Commonwealth Bank, and attached its effects
in the defendant's hands.   At that date, the balance of said
Simpson's effects, in the hands of the defendant, was about
$ 12,000, after deducting the probable allowance for charges.
This balance consisted of the two sums abovementioned, and of
the proceeds of the real estate of said Simpson, which the de-
fendant sold, between the 1st and the 9th of September 1840,
under a license granted in September 1839.

The plaintiffs, in their suit aforesaid, obtained judgment against said bank, at the October term, 1840, of the court of common pleas, for the sum of $6846·76, and execution issued thereon, ordering the sheriff to levy the same on the effects of the bank in the hands of the defendant. A demand was made on the defendant by the sheriff, on the 25th of November 1840, but the defendant declined to pay any part of said execution, by reason of the pendency of said Johnson's suit.

Said Johnson recovered judgment in his suit against said bank, at the January term, 1841, of the court of common pleas, for the sum of $7980·83. Execution issued on that judgment, and on the 3d of February 1841, the sheriff demanded of this defendant the effects of said bank, whereon to levy said execution ; which the defendant declined to deliver.

*Blake*, for the plaintiffs.

*Goodrich*, for the defendant.

DEWEY, J.* This is a writ of *scire facias*, in which the plaintiffs seek to charge the defendant as trustee of the Commonwealth Bank, in his capacity of administrator of the goods and estate of John K. Simpson, deceased, under the provision in the Rev. Sts. *c.* 109, § 62, enacting that "any debt or legacy due from an executor or administrator, and any other goods, effects, or credits, in the hands of an executor or administrator as such, may be attached in his hands by the process of foreign attachment."

That the defendant is to be charged in this suit as trustee, to some extent, is conceded ; but to what extent, is submitted to the court upon the facts stated in his answer.

The question presented for adjudication is one of conflicting claims between two attaching creditors, and the amount for which the defendant is to be charged depends upon the extent of the lien upon the goods and estate of the Commonwealth Bank in his hands, acquired by virtue of an attachment of the same by the trustee process, by one Emery Johnson, on the 23d of November 1839, which attachment was prior to that of the plaintiffs.

* *Hubbard*, J. did not sit in this case.

The plaintiffs insist that the defendant's liability to Johnson is restricted to the amount that the Commonwealth Bank would have been entitled to receive upon a distribution of the personal assets of Simpson which were in the defendant's hands at the time such attachment was made ; and that, as to all the subsequently acquired assets, and more especially as to all assets subsequently acquired by the sale of real estate of Simpson, under a license from the court of probate, no lien was created by virtue of the previous attachment by Johnson ; but that the same are to be applied exclusively to the benefit of the plaintiffs, whose subsequent attachment, made on the 22d of September 1840, was after all the property of Simpson, real and personal, had been converted into available funds.

The argument is strongly pressed upon us by the plaintiffs' counsel, that, at the date of the service of Johnson's writ upon the defendant, all liability on his part, beyond the amount of the assets then actually in his hands, was contingent and uncertain, and therefore that he was not at that time further subject to the trustee process. But it seems to us, that as to all the personal estate of Simpson, which came to the hands of his administrator at any time before the final settlement of his account and the decree for distribution of the effects, the rule of law has been declared in various cases, in which it has been held, that such administrator might be held, as such trustee, to the full extent of the funds that might come into his hands before the decree of distribution, although after service of the trustee process upon him. In *Holbrook* v. *Waters*, 19 Pick. 354, where an executor was summoned as trustee of a legatee, and in *Wheeler* v. *Bowen*, 20 Pick. 563, where an administrator was summoned as trustee of an heir at law entitled to a distributive share, it was urged on the part of the trustee, that no liability could attach, because the effects and credits in his hands, at the time of the service of the trustee process, were not absolute, but contingent and uncertain : But the court ruled otherwise, and held that the lien attaches before the decree of distribution, and before any liability to immediate payment of legacies or distributive shares exists. The rule of law, in such cases, I take to be this ; that the lien takes

effect from the service of the trustee process, and reaches the whole interest of the debtor that may eventually come into the hands of the administrator or executor.

Great practical difficulties would arise from any other construction of this statute. If the lien acquired by this process is merely to the extent of assets in the hands of the executor or administrator at the date of the service of the writ, it would require an exact adjustment of the account of his administration at that precise period of time ; and on each successive attachment, a new balance must be struck from time to time, making at these successive periods a distribution and adjustment among all intei ested in the estate — which, from the very nature of the case, would be impracticable ; as the assets to be divided among those interested in the estate can only be ascertained by the final settlement of the accounts of administration.

Nor do we perceive any good and sufficient reason for distinguishing between the cases of assets in the hands of the administrator, directed to be distributed among the creditors of the estate, where the same arise from the avails of land sold for the payment of debts, and the cases where the assets to be divided are exclusively the avails of personal property of the deceased. We think a proper consideration of the nature of the trustee process against an administrator, with a view of acquiring a lien upon him for a debt due from his intestate to the principal defendant in such process, will fully sustain us in this position. The administrator is summoned as trustee, because he is the legal representative of the intestate. The person, whom he thus represents, was the debtor of the principal in the trustee suit, and, as such representative, the administrator is bound to pay the debts due from his intestate. This duty attaches upon him, and is one as to which he cannot avoid a personal responsibility, unless he shows that he has fully administered all the assets, real and personal, of the deceased. This duty or liability is not increased by his instituting the proper proceedings to authorize the sale of real estate, in case where the personal estate is insufficient to pay the debts. It may limit his liability where he shall, in the proper and necessary discharge of the duties of his trust, have disposed

of the real estate, and applied this, as well as the personal, to the payment of the debts, and thus demonstrated that the estate was not solvent. But the effects and credits, attached in his hands by the trustee process, are the debts due from his intestate. This indebtedness is the foundation of the attachment. The liability, as to the amount to be paid over, may be affected by the amount of the assets eventually in his hands ; but whatever those assets may be, and from whatever source they may have been derived, to the extent that they furnish funds to pay the debts of the deceased, to that extent the administrator is responsible ; and that liability is absolute and fixed — although uncertain in amount — from the time the administrator shall have accepted his trust.

And in this connexion it may be remarked, that it was equally a departure from the old doctrine, that a trustee could only be charged to the extent of the actual credits in his hands at the time of the service upon him as trustee, to charge an administrator with the moneys in his hands at the time of the final settle ment, or decree of distribution, which were the avails of notes of hand or other choses in action that were received by him after the service of the trustee process. But such construction has seemed to be necessary to give proper effect to the statute.

We think the present case, therefore, furnishes no exception to the general rule, that upon the service of a trustee process upon an administrator or executor, a lien attaches upon the debt, legacy, or distributive share, as the case may be, in the hands of such administrator or executor, which will entitle the plaintiff in such trustee process to demand and receive of the trustee whatever sum may be eventually due from him, as such administrator or executor, to the principal defendant in such action. The effect of such attachment is, that the lien thus first acquired has a priority over all subsequent similar attachments, to the whole extent of the debt eventually to be paid by the admin istrator.

The judgment in the present case will be, that the defendant be allowed to retain from the amount in his hands, due from him as administrator of the estate of John K. Simpson, such

sum as will be necessary to satisfy the full amount of the judg
ment in favor of Emery Johnson against the Commonwealth
Bank, and the defendant as trustee of that bank ; and that he be
charged as trustee, in the present action, for the balance that
may remain in his hands after satisfying the judgment in favor
of said Johnson.